Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A Professional Corporation**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
        sestradavillela@gastelumfirm.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; DOES 1 through 10, individually, jointly and severally, <br><br> Defendants. | **CASE NO.:** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983) <br> 2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983) <br> 3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983) <br> 4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983) <br> 5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983) <br> 6. Negligence – Wrongful Death <br> 7. Negligence – Medical Malpractice <br> 8. Violation of California Government Code §845.6 <br> 9. Violation of California Civil Code §52.1 (Tom Bane Act) <br> 10. Intentional Infliction of Emotional Distress <br> 11. Declaratory Relief (28 U.S.C. § 2201) <br><br> **DEMAND FOR JURY TRIAL** |

## **COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually and allege as follows:

## **I.**

## **INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Jesse Rodriguez Flores III who died in-custody on September 18, 2023, at the Riverside County Sheriff's Department, Cois M. Byrd Detention Center.  This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.



2.      Jesse ("Jess") Flores was the loving father of three young daughters, M.F., R.F., and S.F. His role as a father was his greatest joy, and his love for his "girls" was undeniable. Jess was a playful father, the kind of dad who would get down on the floor to play, pretend to take a big bite of candy only to sneak it away, or wake up early for snuggles during Saturday morning cartoons. He never took himself too seriously and found pure happiness in making his daughters laugh. As a son, brother and uncle, Jess's sense of humor was equally infectious. He loved to entertain his nieces and nephews with jokes, funny voices, and silly faces. Jess's love, humor and boundless creativity made him a beloved member of his family.

3.     In 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years.  In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths.  The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

4.     Indeed, in 2023, the Riverside County Jails continued to experience an alarming number of in-custody deaths, specifically sixteen (16) in-custody deaths, ranging from inmate-on-inmate violence and sexual assault to severely injured arrestees dying at intake to pretrial detainees not receiving the necessary medical care to treat chronic health conditions.

5.     In 2024, the Riverside County Jails have continued to take the lives of pretrial detainees who are subjected to cruel and inhumane treatment by custody and medical staff.[1]

6.     Long before Jess Flores's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

7.     The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the Riverside County correctional

---

[1] Indeed, on April 22, 2024, RCSD Corrections Captain Alyssa Vernal sent an email to the corrections sergeants.  The email was sent in response to Mr. Ramos and Mr. Price's 2024 in-custody deaths, and it served to admonish the sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules we should be."

**COMPLAINT FOR DAMAGES**

facilities through the long history of in-custody deaths; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

8. Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Jess Flores was taken into custody and placed at the Cois M. Byrd Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Jess Flores's death on September 18, 2023.

## II.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

**COMPLAINT FOR DAMAGES**

10.     This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

11.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

12.     Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

13.     With respect to the supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## IV.

## PARTIES

**A. Plaintiffs**

14.     Decedent Jess Flores (hereinafter also "Decedent") was a 46-year-old loving father of three young children, M.F., R.F., and S.F., and the son of Jess R. Flores, Jr., and Deborah Ann Jacobs. At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF JESS FLORES, are brought by the successors in interest, M.F., R.F., and S.F.

15.     Plaintiff M.F., a minor by and through her Guardian Ad Litem, Justine Flores, is and was, at all times relevant hereto, a resident of the County of Greene, Missouri, and was the natural daughter of decedent Jess Flores. Plaintiff M.F. was 15 years-old when her father, Jess Flores, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§

377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Jess Flores on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

16.    Plaintiff R.F., a minor by and through her Guardian Ad Litem, Justine Flores, is and was, at all times relevant hereto, a resident of the County of Greene, Missouri, and was the natural daughter of decedent Jess Flores. Plaintiff R.F. was 12 years-old when her father, Jess Flores, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Jess Flores on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

17.    Plaintiff S.F., a minor by and through her Guardian Ad Litem, Lydia Arzola, is and was, at all times relevant hereto, a resident of the County of Riverside, California, and was the natural daughter of decedent Jess Flores. Plaintiff R.F. was 7 years-old when her father, Jess Flores, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Jess Flores on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

18.    Plaintiff JESS R. FLORES, JR, is and was, at all times relevant hereto, the natural father of decedent Jess Flores, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 *et seq*., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Jess Flores on the basis of 42 U.S.C. §§ 1983

1  and 1988, the United States Constitution, federal and state civil rights law and

2  California law. Plaintiff also brings these claims as a Private Attorney General, to

3  vindicate not only his rights, but others' civil rights of great importance.

4       19.    Plaintiff DEBORAH ANN JACOBS, is and was, at all times relevant

5  hereto, the natural mother of decedent Jess Flores, and at all times relevant hereto was

6  a resident of the County of Riverside, California. Plaintiff brings these claims

7  pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 *et seq*.,

8  which provide for survival and wrongful death actions. Plaintiff also brings her

9  claims individually and on behalf of decedent Jess Flores on the basis of 42 U.S.C. §§

10  1983 and 1988, the United States Constitution, federal and state civil rights law and

11  California law. Plaintiff also brings these claims as a Private Attorney General, to

12  vindicate not only her rights, but others' civil rights of great importance.

13  **B. Defendants**

14       20.    Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY")

15  owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY

16  SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public

17  entity, which employs other Doe Defendants in this action. At all times relevant to the

18  facts alleged herein, Defendant COUNTY was responsible for assuring that the

19  actions, omissions, policies, procedures, practices and customs of its employees,

20  including RCSD employees and the Correctional Health Services (hereinafter also

21  "CHS") employees, complied with the laws and the Constitutions of the United States

22  and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and

23  was responsible for ensuring the protection and safety of all persons incarcerated at

24  the RCSD correctional facilities, including the Cois M. Byrd Detention Center

25  (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry

26  D. Smith Correctional Facility (hereinafter "CBDC"), John J. Benoit Detention

27  Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY

28  Jails").

**COMPLAINT FOR DAMAGES**

21.     Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

22.     Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

23.     Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE.

1  During the relevant time period, Defendant KRACHMER was responsible for the
2  general management and control of the COUNTY Corrections Operations, with
3  primary authority and responsibility for the operations, staff assignments, program
4  development, personnel supervision and training, maintenance and auxiliary inmate
5  services at the jail, subordinate to the Corrections Assistant Chief, Defendant
6  EDWARD DELGADO. Defendant KRACHMER is being sued in his individual
7  capacity.

8        24.    Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all
9  times relevant herein the Corrections Captain at the Cois M. Byrd Detention Center
10 (CBDC), one of the highest-level supervisory positions. During the relevant time
11 period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily
12 responsible for assisting the Sheriff-Coroner with oversight and administration of the
13 CBDC, including ensuring the safety of the inmates housed therein. As Corrections
14 Captain, Defendant HOLM was responsible for supervision of RCSD and CHS
15 employees and/or agents at the CBDC, and for the promulgation of the policies and
16 procedures and allowance of the practices/customs pursuant to which the acts of the
17 RCSD and CHS's employees alleged herein were committed. Defendant HOLM also
18 directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his
19 individual capacity.

20       25.    Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY
21 SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and
22 HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

23       26.    Plaintiffs are ignorant of the true names and capacities of Defendants
24 DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such
25 fictitious names. Plaintiffs are informed and believe and thereon allege that each
26 Defendant so named is responsible in some manner for the injuries and damages
27 sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state
28 the names and capacities of each DOE Defendant when they have been ascertained.

9

27.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1 through10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

28.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

29.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

///

**COMPLAINT FOR DAMAGES**

30.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

31.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Jess Flore's constitutional rights and other harm.

32.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

33.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

**COMPLAINT FOR DAMAGES**

34.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

35.    On or about September 5, 2023, decedent Jess Flores was arrested and booked into the Riverside County Sheriff's Department, Cois M. Byrd Detention Center, located at 30755-B Auld Road, Murrieta, California 92563.

36.    Upon information and belief, the RCSD custody staff and medical staff were aware Mr. Flores suffered from congestive heart failure on or about September 5, 2023. As such, the RCSD custody staff and medical staff had ample notice that Mr. Flores was suffering from a serious and life-threatening medical condition, and yet were deliberately indifferent to his serious medical needs.

37.    For approximately ten (10) days, Mr. Flores complained of serious and life-threatening symptoms including that he had swelling in his lower extremities; that he had been experiencing chest pain, abdominal pain, and back pain; that he had been nauseous and vomiting; and that he had been feeling short of breath. For approximately five (5) days, Mr. Flores reported that he was coughing up blood.

38.    Despite these clear signs that Mr. Flores was in dire need of medical care, including hospitalization and surgery, the RCSD custody staff and medical staff ignored him and failed to get him immediate medical attention by transferring him to a local emergency room, failed to provide any enhanced monitoring or supervision, and failed to alert medical providers, including a cardiologist and/or an emergency medicine physician, of Mr. Flores's deteriorating health.

39.    Twelve (12) days after his initial arrest and booking, on September 17, 2023, at approximately 10:58am, Mr. Flores was transported to the emergency department at Riverside University Health System (RUHS) due to persistent coughing up of blood. Mr. Flores was subsequently admitted for heart failure, hepatic congestion, and transaminitis.

**COMPLAINT FOR DAMAGES**

40.    On September 18, 2023, at approximately 10:00am, Mr. Flores was found unresponsive in his hospital room.

41.    Due to the great delays on behalf of the CBDC custody staff and medical staff in securing adequate emergency medical attention for Jess Flores, and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, Jess Flores did not respond to medical intervention and died on September 18, 2023, at approximately 11:22am.

42.    Jess Flores was only 46 years old when he died on September 18, 2023 while he was in custody at the Cois M. Byrd Detention Center.

43.    Jess Flores was a pretrial detainee, and therefore, innocent until proven guilty.

44.    Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910, *et seq.*, and this action is timely filed within all applicable statutes of limitation.

45.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

46.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation.3 *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an

1    official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[2]

2        47.    To establish municipal liability under *Monell v. Dep't of Soc. Servs. of*

3    *City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff]

4    possessed a constitutional right of which she was deprived; (2) that the municipality

5    had a policy/custom/practice; (3) that this policy/custom/practice amounts to

6    deliberate indifference to the plaintiff's constitutional right; and, (4) that the

7    policy/custom/practice is the moving force behind the constitutional violation.

8    *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The

9    policy/custom/practice "need only cause the constitutional violation; it need not be

10   unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

11   Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice

12   or policy behind the violation of rights; (2) a deliberately indifferent omission, such

13   as a failure to train or failure to have a needed policy; and (3) a final policy-maker's

14   involvement in or ratification of the conduct underlying the violation of rights.

15   *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

16   **A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

17       48.    In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S

18   DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths.

19   Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in

20   any year since 2005.[3]

21       49.    In the year prior to Jess Flore's death, there were eighteen (18) in-

22   custody deaths within the COUNTY Jails during the 2022 calendar year:

23

24

--------

25   [2] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the

26   collective inaction of the Long Beach Police Department.").

27   [3] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at

28   https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

**COMPLAINT FOR DAMAGES**

a.  Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

b.  Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

c.  Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

d.  Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

e.  Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[4]

f.  Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

g.  Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

h.  Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

i.  Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

j.  Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l.  Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[5]

---

[4] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in the facility for only (6) six days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

[5] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells

**COMPLAINT FOR DAMAGES**

m. Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[6]

n. Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o. Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[7]

p. Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q. Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

r. Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

50.    The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.

51.    The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November

___

intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap.  Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide.  What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[6]  Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender.  Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[7]  Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with.  *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

**COMPLAINT FOR DAMAGES**

2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[8]

52.   The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC.  From November 19, 2022 through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication.  Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at RPDC in 2015, as well as his extensive medical and mental health history.  These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist.  The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist.  When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Continued to Experience a Deadly Year in 2023.**

53.   In 2023, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's COUNTY Jails continued to experience a deadly year:

a. On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC. According to inmates who perceived the attack, Mr. Spratt was physically and sexually assaulted by his cellmate for an appreciable amount of time.  At the conclusion of the assault, the cellmate proceeded

[8] See "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

to throw Mr. Spratt's body from the second tier of the housing module. Mr. Spratt was only 24 years old at the time of his death.

b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC.  Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC.  Mr. Viramontes was only 26 years old at the time of his death.

c. On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest.  An investigation into the manner and means of death remains pending.

d. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest.  An investigation into the manner and means of death remains pending.

e. On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at CBDC.  Upon information and belief, the death was caused by hazards permeating the CBDC.  An investigation into the manner and means of death remains pending.

f. On May 26, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023.  He died four days later on May 26, 2023.  While the RCSD's investigation into the manner and means of death remains pending, an independent autopsy evidenced blunt force trauma to Mr. Guzman's head and upper body.

g. On July 5, 2023, Astrid Johnson, a 62-year-old ~~man~~ female inmate housed in the JBDC, died in-custody.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms.

18

Johnson with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "natural."

h.   On August 14, 2023, Steven Crawford, 71-year-old pretrial detainee, was found unresponsive in his cell at JBDC.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Crawford with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "natural."

i.   On August 27, 2023, Tavea Starks-Walker, a 31-year-old pretrial detainee, was found unresponsive in his cell at CBDC.  Upon information and belief, Mr. Starks-Walker's death was caused by hazards permeating the CBDC.  An investigation into the manner and means of death remains pending.

j.   On September 14, 2023, Tina Atchley, a 65-year-old pretrial detainee, was found unresponsive in her cell.   Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Atchley with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "natural."

k.   On September 14, 2023, Damon Beitz, a 46-year-old pretrial detainee, was found unresponsive in the intake area at RPDC.  Hours prior to being found unresponsive, Mr. Beitz had been arrested by police officers from the Riverside Police Department.  Upon information and belief, Mr. Beitz was physically assaulted by the Riverside Police Department police officers causing severe injuries to his person.  Upon information and belief, Mr. Beitz's succumbed to those injuries while in-custody at the RPDC intake area due to the arresting police officers failing to provide Mr. Beitz with medical care, and due to the RCSD custody personnel and CHS medical personnel being deliberately indifferent towards Mr. Beitz obvious physical injuries.  Nonetheless, the RCSD reported the manner of death to be "drug overdose."

**COMPLAINT FOR DAMAGES**

l.  On September 18, 2023, Jess Flores, a 46-year-old pretrial detainee, was found unresponsive in his cell at CBDC.   Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Flores with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "natural."

m.  On November 4, 2023, Charles Giurbino, a 58-year-old pretrial detainee, was found unresponsive in the intake area of CBDC.   Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Giurbino with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

n.  On December 13, 2023, Luke Hanchette, a 44-year-old pretrial detainee, was found unresponsive in his cell at RCSD.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Hanchette with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

o.  On December 15, 2023, Shaundale Booker, a 21-year-old pretrial detainee, was found unresponsive in his cell at RCSD. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Booker with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

p.  On December 17, 2023, Heather Hendy, a 29-year-old pretrial detainee, was found unresponsive in her cell at RCSD.   Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Hendy with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

///
///
///
///

COMPLAINT FOR DAMAGES

**C. In 2024, the COUNTY Jails Have Continued to Experience In-Custody Deaths Resulting from Egregious Failures on Behalf of the RCSD Custody Staff and the CHS Medical Staff.**

54.    In 2024, the COUNTY Jails have continued to take the lives of pretrial detainees who are subjected to cruel and inhumane treatment by RCSD custody staff and CHS medical staff:

    a.  On January 9, 2024, Richard Contreras, a 44-year-old pretrial detainee, succumbed to brain injuries in the hospital following a gruesome attack by his cellmate.  Upon information and belief, Mr. Contreras had been physically assaulted by the same cellmate days prior and taken to the hospital. Upon returning to the RCSD from the hospital, Mr. Contreras was housed in the *same* cell with the *same* violent cellmate resulting in his death.  Despite the RCSD custody personnel's deliberate failures in protecting Mr. Contreras from the violent inmate, the RCSD reported the manner of death to be "pending."

    b.  On April 16, 2024, Reynold Ramos, a 55-year-old pretrial detainee, was found unresponsive in his cell at the RPDC.  Upon information and belief, an inmate observed Mr. Ramos fashioning a noose in an attempt to hang himself.  The inmate proceeded to utilize the cell intercom to get the custody staff's attention, however, the custody staff ignored the intercom calls.  Mr. Ramos was found 45 minutes later hanging from the noose.   Nonetheless, the RCSD reported the manner of death to be "pending."

    c.  On April 19, 2024,[9] Mack Price, a 53-year-old pretrial detainee, was found unresponsive in his cell at CBDC.   Upon information and belief,

---

[9] Indeed, on April 22, 2024, RPDC Corrections Captain Alyssa Vernal sent an email to the RPDC sergeants.  The email was sent in response to Mr. Ramos and Mr. Price's in-custody deaths, and it served to admonish the RPDC sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules we should be."

RCSD personnel and CHS medical personnel failed to provide Mr. Price with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

d. On August 18, 2024, an unidentified 41-year-old male pretrial detainee was found unresponsive in a sobering cell at the CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide the detainee with adequate medical care.  Nonetheless, the RCSD reported the manner of death to be "pending."

55.    Furthermore, the Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2024 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, Ruben Guzman and Richard Contreras, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

**D. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

56.    Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[10] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[11]

---

[10] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[11]  *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The

57.    The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

58.    The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[12]

59.    The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners. [13] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[14]

---

review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[12] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[13] *Id*.

[14] Pretrial detainees are perceived as innocent under the eyes of the law. Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody. More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection. *See Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been convicted of a crime, they are deemed to be a post-conviction prisoner. While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard). Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

**COMPLAINT FOR DAMAGES**

**E. California Department of Justice Launched Patterns and Practices
Investigation into Recording Breaking In-Custody Deaths at the
COUNTY Jails.**

60.    On February 23, 2023, the California Department of Justice (DOJ)
announced its decision to launch a formal investigation into Defendant RIVERSIDE
COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices
resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of
excessive force by sheriff's deputies, disproportionately affecting Latino and African
American communities.[15] The raw data and the per capita data make clear that the
COUNTY Jails are a death sentence for any pretrial detainee, some of whom have
died just days after being booked.[16]  For reference, San Diego County had 19 in-
custody deaths in 2022, despite an average *daily* jail population of *500 more people
than* Riverside County.

61.    During the press conference, the California Attorney General Rob Bonta
expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY
SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the
institutions that serve them […]. When some communities don't see or feel they are
being treated equitably by law enforcement, it contributes to distrust and hurts public
safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths
and allegations of misconduct — too many families and communities in Riverside
County are hurting and looking for answers. As part of my office's ongoing efforts to
support constitutional policing, the California Department of Justice is opening a civil
rights investigation into the Riverside County Sheriff's Office. Whether you have a

---

[15] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches
Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at
https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-
riverside-county
[16] *Id*.

**COMPLAINT FOR DAMAGES**

1  loved one in jail or are worried about crime in your neighborhood, we all benefit

2  when there is action to ensure the integrity of policing in our state."

3      62.    In response to the California Department of Justice's civil rights

4  investigation in the COUNTY Jails, SHERIFF BIANCO issued the following

5  offensive statement illustrating indifference towards the lives lost in his jails: "This

6  investigation is based on nothing but false, and misleading statements, and straight-

7  out lies from activists, including their attorneys. This will prove to be a complete

8  waste of time and resources."[17]

9  **F. RCSD's History of Indifference Towards Inmates Incarcerated at the**

10     **COUNTY Jails.**

11     63.    For well over a decade now, the COUNTY's own Grand Jury, as well as

12  several independent auditors, have come to the same conclusion: dangerous deficits

13  in health care services at the jails threaten the lives and health of the thousands of

14  men and women they hold.

15     64.    The "2010-11 Grand Jury Report: Riverside County Detention Health

16  Care Administration" found systemic failures in treatment, medication management,

17  record-keeping, and administration of forced medications, among other areas. [18]

18     65.    The Grand Jury released an updated report in June 2012, noting that

19  mental health staffing had in fact decreased since its prior year's report. [19]

20     66.    On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al.*

21  *v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed

22  against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY

23

24  [17] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at

25  https://www.youtube.com/watch?v=6ttMVVLyfaQ

26  [18] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

27  [19] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

28

**COMPLAINT FOR DAMAGES**

SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

67.    The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

    a. RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

    b.  RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

    c. RCSD, by policy and practice, maintains and runs substandard medication management and administration;

    d. RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

    e. RCSD, by policy and practice, provides substandard medical care to inmates;

    f. RCSD, by policy and practice, provides substandard mental health care to inmates;

68.    On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

69.    On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant

**COMPLAINT FOR DAMAGES**

1    risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make

2    recommendations for improvements that will provide the minimum care guaranteed

3    by the United States Constitution.

4        70.    On July 15, 2015, the neutrally-appointed experts issued reports,

5    determining that the health care failed to meet the constitutional minimum.  As such,

6    the parties agreed to negotiate a Remedial Plan to address the identified deficiencies

7    in the expert reports.

8        71.    Due to the COUNTY DEFENDANTS' ongoing failures to comply with

9    the Consent Decree, Plaintiffs in the *Gray* Class Action have had to seek emergency

10    relief from the Court to ensure that the Consent Decree is enforced.

11    **G. Sheriff Bianco's Indifference to the Constitutional Violations and Failures**

12        **Permeating His COUNTY Jails.**

13        72.    A County Sheriff, like SHERIFF BIANCO "may be held liable as a

14    supervisor under § 1983 if there exists either (1) his or her personal involvement in

15    the constitutional deprivation, or (2) a sufficient causal connection between the

16    supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652

17    F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in

18    motion a series of acts by others or by knowingly refusing to terminate a series of acts

19    by others, which the supervisor knew or reasonably should have known would cause

20    others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held

21    that a supervisor "need not be 'directly and personally involved in the same way as

22    are the individual officers who are on the scene inflicting constitutional injury.'" *Id*.

23    at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City*

24    *of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's

25    participation could include his 'own culpable action or inaction in the training,

26    supervision, or control of his subordinates,' 'his acquiescence in the constitutional

27    deprivations of which the complaint is made,' or 'conduct that showed a reckless or

28    callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff

1    to allege that a supervisor was physically present when the injury occurred." *Id.*

2        73.    The endemic, ongoing and unabated risks of injury or death to inmates
3    incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long
4    been aware of these risks and harms which have resulted in injury and death to
5    inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take
6    action to ameliorate these conditions constitutes deliberate indifference to the safety
7    and health of inmates incarcerated in his COUNTY Jails.

8        74.    SHERIFF BIANCO has made several public statements all of which
9    serve as illustrations of his great indifference towards the inmates, most of whom are
10   pretrial detainees and innocent under the eyes of the law, who are in the
11   government's custody in his COUNTY Jails.

12       75.    Despite the alarming trends in overdoses and in-custody deaths,
13   SHERIFF BIANCO blames the decedents and their families for the in-custody deaths
14   and overdoses in the COUNTY Jails – all of which are fully controlled and managed
15   by him.

16       76.    On September 16, 2022, The Press-Enterprise posted the article "Sheriff
17   Explains How 13 Riverside County Inmates Died This Year" on Facebook with the
18   following caption: "Less than an hour after the family of a man who died in jail
19   publicly complained about a lack of information on his death and that of 12 other
20   Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [20]

21   ///
22   ///
23   ///
24   ///
25   ///

26   _____

27   [20] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at:
28   https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

COMPLAINT FOR DAMAGES

77.    Within fourteen hours of the article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[21]



(1)    Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2)    Did they ever demand that their family members not commit crimes in the first place?

(3)    Did their parents ever demand they take responsibility for their own actions?

(4)    Do they ever think they played a huge part in the situation they find

---

[21] Notably, SHERIFF BIANCO deleted the post thereafter. SHERIFF BIANCO did this despite the post being highly relevant and material to Plaintiffs' supervisorial claims against him. This is textbook definition of spoliation. Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020). Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner*, LLP, 590 F.3d 638, 649 (9th Cir.2009); *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

**COMPLAINT FOR DAMAGES**

themselves in, other than the personal actions of their deceased loved one?

78.    SHERIFF BIANCO also blames the inmates themselves:  "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it." [22]

79.    In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is going to waste our time.  Every single one of these inmate deaths was out of anyone's control.  The fact of the matter is that they just happened to be in our custody."[23]

80.    Interestingly, SHERIFF BIANCO has taken this hardline (and insulting) position when asked about fentanyl overdoes in his jails.  Yet, upon information and belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of Investigation ("FBI") for his interference with a murder investigation arising from two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022 before many of the fentanyl overdoses in COUNTY Jails.

81.    On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old Arrena Marie Mariotti died from fentanyl overdoses.[24]

///

///

---

[22] *See* "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[23] *See* "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

[24] *See* "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/

**COMPLAINT FOR DAMAGES**

82.    On February 24, 2022, murder charges were filed against Peter Luis Mera Garcia.[25]  Upon information and belief, Peter Luis Mera Garcia is the son of a senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. Notably, the criminal case received wide public attention as this was the first time in the COUNTY OF RIVERSIDE that a person had been charged with murder due to a fentanyl death.

83.    Upon information and belief, the Riverside Police Department ("RPD") Special Weapons and Tactics ("SWAT") was charged with executing the search warrant of suspect Peter Luis Mera Garcia's home.

84.    Upon information and belief, suspect Peter Mera Garcia lived with his parents, including his father who was a senior level deputy employed by the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

85.    Upon information and belief, Former RPD Sergeant, Frank Hoyos, was one of the SWAT Team members assigned to execute the search warrant.

86.    Upon information and belief, prior to the execution of the search warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a favor.  SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of the RCSD senior level deputy.

87.    Upon information and belief, RPD Chief Gonzalez proceeded to call RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was calling him because SHERIFF BIANCO wanted to know the name of his deputy whose son had been booked.  RPD Chief Gonzalez tasked Sgt. Simmons with the assignment of finding out the name for SHERIFF BIANCO.

88.    Upon information and belief, RPD Sgt. Simmons secured the name of the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

///

---

[25] *Id.*

**COMPLAINT FOR DAMAGES**

89.    Upon information and belief RPD Chief Gonzalez then relayed the name to SHERIFF BIANCO.

90.    Upon information and belief, SHERIFF BIANCO then alerted his senior level deputy that the RPD SWAT Team would be executing the search warrant on a specific date and time and looking for very specific evidence in his home.

91.    Upon information and belief, the RCSD Senior Level Deputy convened with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the RPD SWAT Team arrived at their home, they would find zero traces of a crime.

92.    Upon information and belief, when the RPD SWAT Team executed the search warrant during the early morning hours, the SWAT Team was greeted by the RCSD Senior Level Deputy who welcomed the SWAT Team into his home.  Indeed, no evidence of a crime was found.

93.    Clearly, SHERIFF BIANCO is personally responsible for the fentanyl crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate measures within his jail to prevent individuals from dying from fentanyl.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 1-10)

94.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

95.    Long before Jess Flores's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

96.    Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 1 through 10 were repeatedly put

1  on notice of the great dangers which existed within the COUNTY Jails through the

2  long history of in-custody deaths; the record-breaking amount of fentanyl overdoses

3  throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action

4  *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D.

5  Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's

6  custody and medical staff's deliberate indifference towards the safety and protection

7  of inmates; the warnings from the neutrally-selected experts regarding failures

8  amounting to constitutional violations; a Consent Decree directing Defendant

9  RIVERSIDE COUNTY SHERIFF'S DEPARTMENT to implement a Remedial Plan

10 to meet the minimum level of health care necessary to fulfill its obligations under the

11 Eighth and Fourteenth Amendments; and through a Settlement Agreement which the

12 COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY

13 SHERIFF'S DEPARTMENT  remedy all of the deficiencies in healthcare and

14 disability accommodations alleged in the *Gray* Class Action complaint.

15      97.    Despite this long history of complete disregard to inmate safety and

16 protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES

17 KRACHMER, DAVID HOLM and DOES 1 through 10 have deliberately failed to

18 take even modest actions to prevent in-custody deaths at the COUNTY Jails which

19 have for a very long time been infested with endemic, ongoing and unabated risks of

20 injury or death to inmates.

21      98.    The Defendant officers, and each of them, acted with malice and

22 oppression and with a conscious disregard for Plaintiffs' rights, making the individual

23 defendants, including DOES 1-10, liable for punitive damages.

24 ///

25 ///

26 ///

27 ///

28 ///

**COMPLAINT FOR DAMAGES**

# VIII.

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

### By Plaintiff Estate of Jess Flores

### As Against Defendants DOES 1 through 10

99.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

100.    Pretrial detainees such as Jess Flores have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

101.    Upon information and belief, on September 18, 2023, Defendants DOES 1 through 10, and each of them, made the intentional decision to place Jess Flores in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused Jess Flores's death.

102.    Indeed, well before September 18, 2023, Defendants DOES 1 through 10, had express knowledge concerning the conditions of confinement which could cause death or seriously harm inmates such as Jess Flores and place Jess Flores at substantial risk of suffering serious harm. However, Defendants DOES 1 through 10, did not take reasonable available measures to abate or reduce that risk, even though any reasonable person in such circumstances would have appreciated the high degree of risk involved. It was clear that the consequence of not abating or reducing such risks would entail death which was obvious under the circumstances. Clearly, by not taking such measures, Defendants DOES 1 through 10, caused Jess Flores's death.

103.    Defendants DOES 1 through 10 failed to conduct proper and timely Title 15 welfare and safety checks, thereby authorizing, permitting, and/or encouraging a

**COMPLAINT FOR DAMAGES**

correctional environment that posed a substantial risk to the health and safety of inmates who suffered from life threatening conditions life Jess Flores. Because of these Defendants' deliberate conduct, Jess Flores died on September 18, 2023.

104.   Due to the great delays in securing adequate emergency medical attention for Jess Flores, and the wrongful and deliberate conduct on behalf of Defendants DOES 1 through 10 of failing to adequately monitor and supervise inmates through the use of surveillance cameras to ensure that a medical emergency does not go unnoticed and is attended to in a timely manner; and failing to perform the required safety and welfare checks, Jess Flores did not respond to medical intervention and died on September 18, 2023.

105.   Defendants COUNTY, RCSD, DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Jess Flores's position.

106.   Each Defendant could have taken action to prevent unnecessary harm to decedent Jess Flores but refused or failed to do so.

107.   By policy, procedure, and practice, Defendants COUNTY, RCSD, DOES 1 through 10 deliberately disregarded the risks posed to persons incarcerated at the CBDC, as alleged above.  Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Jess Flores at CBDC.

108.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

109.   Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including CBDC, who, upon information and belief, directed the deputies to falsify safety check logs

**COMPLAINT FOR DAMAGES**

1  and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO
2  ratified their actions, and the practices used under his watch.

3      110.   Defendants COUNTY, RCSD, and DOES 1 through 10 were on notice
4  that their policies, procedures, and practices for monitoring inmates at the COUNTY
5  Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious
6  harm.

7      111.   Defendants including SHERIFF BIANCO, EDWARD DELGADO,
8  JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 failed to properly
9  train and supervise RCSD custody and medical staff regarding policies, procedures,
10 and practices necessary for the protection of inmates from risks and hazards existing
11 within the COUNTY Jails, including CBDC.

12     112.   Defendants including SHERIFF BIANCO, EDWARD DELGADO,
13 JAMES KRACHMER, DAVID HOLM and DOES 8 through 10's failure to correct
14 their policies, procedures, and practices despite notice of significant and dangerous
15 problems evidences deliberate indifference to the inmates in their care.

16     113.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES
17 KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES'
18 actions and inactions amounting to constitutional violations.

19     114.   Defendants DOES 1 through 10's failure to conduct the required safety
20 check of decedent Jess Flores's housing unit on the date of his hospitalization
21 evidences deliberate indifference to the risk of harm to decedent Jess Flores.

22     115.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES
23 KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES'
24 failure to conduct safety checks and falsification of logs.

25     116.   As a direct and proximate result of Defendants' conduct, the civil right
26 of Jess Flores, as protected by the Fourteenth Amendment of the United States
27 Constitution were violated.  Further, decedent Jess Flores experienced physical pain,

28

**COMPLAINT FOR DAMAGES**

1   severe emotional distress, and mental anguish, as well as loss of his life and other

2   damages alleged herein.

3       117.    Defendants subjected decedent Jess Flores to their wrongful

4   conduct, depriving Decedent of rights described herein, knowingly, maliciously, and

5   with conscious and reckless disregard for whether the rights and safety of Decedent

6   and others would be violated by their acts and/or omissions.

7       118.    As a direct and proximate result of Defendants' acts and/or omissions as

8   set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

9       119.    The conduct of Defendants entitles Plaintiff to punitive damages and

10  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not

11  seek punitive damages against Defendants COUNTY.

12      120.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

13  U.S.C. § 1988, and other applicable United States and California codes and laws.

14                                **IX.**

15                    **SECOND CAUSE OF ACTION**

16                    **Failure to Provide Medical Care,**

17  **Violation of the Fourteenth Amendment to the United States Constitution**

18                    **(Survival Action – 42 U.S.C. § 1983)**

19                    **By Plaintiff Estate of Jess Flores**

20                **As Against Defendants DOES 1 through 10**

21      121.    Plaintiffs reallege and incorporate herein by reference each of the

22  preceding paragraphs of this complaint, and any subsequent paragraphs.

23      122.    By the actions and omissions described above, Defendants DOES 1

24  through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Jess

25  Flores, through Plaintiffs herein, of the following clearly established and well-settled

26  constitutional rights protected by the Fourth and Fourteenth Amendments to the

27  United States Constitution: Decedent's right to be free from deliberate indifference to

28

**COMPLAINT FOR DAMAGES**

Jess Flores's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

123.  By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Jess Flores with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody, constituted deliberate indifference to Jess Flores's serious medical needs, health, and safety.

124.  As a direct and proximate result of Defendants' conduct, the civil rights of Jess Flores, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Jess Flores experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

125.  Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

126.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

127.  The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

128.  Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

**COMPLAINT FOR DAMAGES**

# X.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN JACOBS**

**As Against Defendants DOES 1 through 10**

129.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

130.   The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Jess Flores's protection, safety, and serious medical needs, violating decedent Jess Flores's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Jess Flores deprived Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN JACOBS of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

131.   All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

132.   The acts and omissions of each Defendant deprived Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN JACOBS of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of their rights to a parent-child relationship with decedent Jess Flores without due process of law by their deliberate indifference in denying Jess

**COMPLAINT FOR DAMAGES**

1    Flores protection and safety while incarcerated at CBDC and access to medical care

2    while suffering a medical emergency at CBDC.

3        133.   Defendants DOES 1 through 10 and the other involved agents and

4    employees acted pursuant to expressly adopted official policies or longstanding

5    practices or customs of the COUNTY and RCSD. These include policies and

6    longstanding practices or customs of failing to provide persons in pretrial custody

7    who are experiencing medical emergencies access to medical care as stated above and

8    incorporated herein.

9        134.   In addition, the training policies of the COUNTY and RCSD were not

10   adequate to train its deputies, agents and employees to handle the usual and recurring

11   situations with which they must deal with, including but not limited to encounters

12   with individuals in pretrial custody who are experiencing medical emergencies. These

13   Defendants and each of them knew that its failure to adequately train its COUNTY

14   Jails custody and medical staff, including other agents and employees, to interact with

15   individuals suffering from medical emergencies made it highly predictable that its

16   custody and medical staff would engage in conduct that would deprive persons such

17   as decedent Jess Flores, and thus Plaintiffs M.F., R.F., and S.F., JESS R. FLORES,

18   JR., and DEBORAH ANN JACOBS, of their rights. These Defendants were thus

19   deliberately indifferent to the obvious consequences of their failure to train their

20   deputies, agents and employees adequately.

21       135.   Defendants COUNTY and RCSD's official policies and/or longstanding

22   practices or customs, including but not limited to its training policies, caused the

23   deprivation of the constitutional rights of Plaintiffs M.F., R.F., and S.F., JESS R.

24   FLORES, JR., and DEBORAH ANN JACOBS and decedent Jess Flores by each

25   individual Defendant's official policies and/or longstanding practices or customs are

26   so closely related to Jess Flores's injuries and death and thus the deprivation of the

27   rights of Plaintiffs as to be the moving force causing those injuries.

28

**COMPLAINT FOR DAMAGES**

136.    Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including CBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

137.    As a direct and proximate result of Defendants' conduct, the civil rights of Jess Flores, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Jess Flores experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

138.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

139.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

140.    The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

141.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

///

///

///

///

41

# XI.

# FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of Jess Flores As Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

142.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

143.   In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation.3 *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[26]

144.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

---

[26] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

**COMPLAINT FOR DAMAGES**

b.    To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

c.    To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

d.    To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

e.    To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f.    To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i.    To cover up violations of constitutional rights by any or all of the following:

**COMPLAINT FOR DAMAGES**

i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails; and

iv. By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the RCSD, or medical staff does not provide adverse information against a fellow officer, or member of the RCSD or the medical staff;

k. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

145. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following

44

**COMPLAINT FOR DAMAGES**

customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM:

    a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

    b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

    c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

    d.    To cover up violations of constitutional rights by any or all of the following:

        i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

        ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

        iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

    e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

**COMPLAINT FOR DAMAGES**

f.      To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.      To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

146.    Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Jess Flores, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

147.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Jess Flores was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have access to medical care when

46

**COMPLAINT FOR DAMAGES**

suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Jess Flores. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

148.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Jess Flores's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Jess Flores to their wrongful conduct, depriving decedent Jess Flores of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Jess Flores, Plaintiffs and others would be violated by their acts and/or omissions.

149.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Jess Flores suffered serious injuries and death,

Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

## XII.

## FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Jess Flores As Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10**

150.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

151.    At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

152.    Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Jess Flores's, and others' constitutional rights, which were thereby violated as described above.

153.    As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of decedent Jess Flores. Each of these

48

supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Jess Flores of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Jess Flores of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Jess Flores's rights, and in fact did cause the violation of decedent Jess Flores's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Jess Flores' rights.

154.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Jess Flores's, and others' constitutional rights, which were thereby violated as described above.

155.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Jess Flores was not justified or necessary, but represented deliberate indifference to

his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Jess Flores. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

156. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Jess Flores's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

157. Defendants subjected decedent Jess Flores to their wrongful conduct, depriving decedent Jess Flores of rights described herein, knowingly, maliciously,

**COMPLAINT FOR DAMAGES**

1    and with conscious and reckless disregard for whether the rights and safety of

2    decedent Jess Flores and others would be violated by their acts and/or omissions.

3        158.  As a direct and proximate result of the unconstitutional actions,

4    omissions, customs, policies, practices, and procedures of Defendants SHERIFF

5    BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 as described

6    above, Plaintiff sustained serious and permanent injuries and is entitled to damages,

7    penalties, costs, and attorneys' fees.

8    **XIII.**

9    **<u>SIXTH CAUSE OF ACTION</u>**

10    **Negligence – Wrongful Death**

11    **Plaintiffs M.F., R.F., and S.F. As Against All Defendants**

12        159.  Plaintiffs reallege and incorporate herein by reference each of the

13    preceding paragraphs of this complaint, and any subsequent paragraphs.

14        160.  At all times, Defendants DOES 1 through 10 owed Plaintiffs and

15    decedent Jess Flores the duty to act with due care in the execution and enforcement of

16    any right, law, or legal obligation.

17        161.  At all times, these Defendants owed Plaintiffs and decedent Jess Flores

18    the duty to act with reasonable care.

19        162.  These general duties of reasonable care and due care owed to Plaintiffs

20    and decedent Jess Flores by these Defendants include but are not limited to the

21    following specific obligations:

22            a.  To summon, or transport Decedent to, necessary and appropriate

23               emergency medical care;

24            b.  To refrain from unreasonably creating danger or increasing Decedent's

25               risk of harm;

26            c.  To use generally accepted law enforcement procedures and tactics that

27               are reasonable and appropriate for Decedent's status as a person in

28               medical crisis with serious medical needs;

**COMPLAINT FOR DAMAGES**

d. To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

e. To refrain from abusing their authority granted them by law; and

f. To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

163. Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Jess Flores.

164. Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

165. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Jess Flores sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XIV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of Jess Flores As Against All Defendants

166. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

167. Decedent Jess Flores was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly

and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Jess Flores to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Jess Flores.

168.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Jess Flores emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Jess Flores was provided.

169.    As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

170.    Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## XV.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff Estate of Jess Flores As Against All Defendants

171.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

172.    Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate

medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Jess Flores's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

173.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

174.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Jess Flores was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1

### (Tom Bane Act - Survival Action)

### Plaintiff Estate of Jess Flores As Against All Defendants

175.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

176.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

177.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Jess Flores was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Jess Flores's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d. The right to emergency medical care as required by California Government Code §845.6.

178. Defendants' violations of decedent Jess Flores's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[27] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Jess Flores's rights as described above, Defendants violated Jess Flores's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b. With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

---

[27] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

c. Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d. Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

e. Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

179. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Jess Flores's rights, or to any legitimate and lawful jail or law enforcement activity.

180. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

181. Further, each Defendant violated decedent Jess Flores's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

182. Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

183. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Jess Flores's rights under the United States and

1  California Constitutions, Plaintiff sustained injuries and damages, and against each

2  and every Defendant is entitled to relief, including punitive damages against all

3  individual Defendants, and all damages allowed by California Civil Code §§ 52 and

4  52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

5  ## XVII.

6  ## TENTH CAUSE OF ACTION

7  ### Intentional Infliction of Emotional Distress

8  **Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN**

9  **JACOBS As Against Defendant SHERIFF CHAD BIANCO**

10  184.   Plaintiffs reallege and incorporate herein by reference each of the

11  preceding paragraphs of this complaint, and any subsequent paragraphs.

12  185.   On August 2, 2024, SHERIFF BIANCO dedicated an episode on in-

13  custody deaths on his "RSO Roundup" podcast which is featured on the RCSD's

14  YouTube channel.[28]

15  186.   In the episode, SHERIFF BIANCO issued the following misleading

16  statements[29]:

17      a. The RCSD has offered "unfettered access to everything that we have" to

18         local news outlets;

19      b. The California Attorney General Rob Bonta was "made fully aware of

20         every single death that we had in custody" in 2022;

21      c. There has "never been really even an allegation" that RCSD deputies

22         within the jails have caused the death of an inmate

23  187.   Defendant SHERIFF BIANCO posted these comments on the public

24  forum with the intent to harass and cause Plaintiffs M.F., R.F., and S.F., JESS R.

25  

26  [28]  *See* SHERIFF BIANCO's YouTube/Podcast "RSO Roundup" Podcast Episode 33: "In-Custody Deaths", available at https://www.youtube.com/watch?v=h3LkseEQJGA

27  [29]  *See* "Fact Check: Riverside County Sheriff Chad Bianco's Claims on Jail Deaths and Transparency" (Desert Sun, August 29, 2024), available at

28  https://www.desertsun.com/story/news/crime_courts/2024/08/28/fact-check-riverside-county-sheriff-chad-bianco-on-jail-deaths/74974365007/

FLORES, JR., and DEBORAH ANN JACOBS mental anguish and turmoil.   He knew that given the public forum nature of the YouTube podcast that the family of Jess Flores, including the present Plaintiffs, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish.  Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

188.   It was his intention to cause them great mental/psychological pain and anguish, and he did so through these actions.

189.   Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN JACOBS seek compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional misconduct.  Plaintiffs have also suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

190.   The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

191.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

192.   As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiffs M.F., R.F., and S.F., JESS R. FLORES, JR., and DEBORAH ANN JACOBS sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

//

///

///

**COMPLAINT FOR DAMAGES**

## XVIII.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C. § 2201)

### Plaintiffs As Against All Defendants

193.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

194.    There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

195.    Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## XIX.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of Jess Flores, pursuant to Cal. Code of Civ. Proc. § 377.60, *et. seq*.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60, *et. seq*.;

C.    Jess Flores's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20, *et. seq*.;

D.    Violation of Jess Flores's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20, *et. seq*. and federal civil rights law;

E.    Jess Flores's loss of life, pursuant to federal civil rights law;

F.    Jess Flores's conscious pain, suffering, and disfigurement,

**COMPLAINT FOR DAMAGES**

pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual peace officer defendants;

J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.    A multiplier of damages, including treble damages, and penalties under the Tom Bane Act;

L.    Interest; and

M.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20, *et seq.*, 377.60, *et seq.*, and 1021.5; California Civil Code §§ 52, *et seq.*, 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: September 10, 2024

**GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_

Denisse O. Gastélum, Esq.
Selene Estrada-Villela Esq.
Attorneys for Plaintiffs,
ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually

60

**COMPLAINT FOR DAMAGES**

Dated: September 10, 2024

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JESS FLORES, by and through
successors in interest, M.F., R.F., and S.F.; M.F., a
minor, by and through Guardian Ad Litem, Justine
Flores; R.F., a minor, by and through Guardian Ad
Litem, Justine Flores; S.F., a minor, by and through
Guardian Ad Litem, Lydia Arzola; JESS R.
FLORES, JR., individually; and DEBORAH ANN
JACOBS, individually

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually hereby make a demand for a jury trial in this action.

Dated: September 10, 2024

**GASTÉLUM LAW, APC**

By: _____

Denisse O. Gastélum, Esq.
Selene Estrada-Villela Esq.
Attorneys for Plaintiffs,
ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually

Dated: September 10, 2024

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JESS FLORES, by and through successors in interest, M.F., R.F., and S.F.; M.F., a minor, by and through Guardian Ad Litem, Justine Flores; R.F., a minor, by and through Guardian Ad Litem, Justine Flores; S.F., a minor, by and through Guardian Ad Litem, Lydia Arzola; JESS R. FLORES, JR., individually; and DEBORAH ANN JACOBS, individually

**COMPLAINT FOR DAMAGES**